IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

Steve Franklin, #153962,        ) CIVIL ACTION NO. 9:08-3744-JFA-BM
                                 )
             Plaintiff,    )
                                 )
v.                                   )
                                 ) **REPORT AND RECOMMENDATION**
Richard Bearden, Doctor;         )
Ame Spencer, Nurse Supervisor;    )
Geraldine Littlejohn, Human Services;   )
Michale Fowler, Grievance Officer;    )
Dr. Cross; and Dr. Woods,       )
                                 )
            Defendants.    )
_____)

       This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights by the named Defendants.

       The Defendants filed a motion for summary judgement pursuant to Rule 56, Fed.R.Civ.P. on March 12, 2009. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on March 13, 2009, advising Plaintiff of the importance of a motion summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter responded by filing his own motion for summary judgment on March 27, 2009, following which the Defendants filed a memorandum in opposition on April 10, 2009.



These motions are now before the Court for disposition.[1]

**Plaintiff's Allegations and Evidence**

Plaintiff alleges in his verified complaint[2] that he is an inmate at the Tyger River Correctional Institution, part of the South Carolina Department of Corrections. Plaintiff alleges that he suffers from back pain, which is getting chronic and that he has told the medical department that he needs better treatment. The doctor at the prison is the Defendant Dr. Bearden. Plaintiff alleges that he tried to tell Dr. Bearden that the medications he was on were causing him serious pain in his stomach as well as muscle pain in his back and neck, and that he wanted Bearden to put him on "Neurontin" or "Backlapen", but that Dr. Bearden has told him that those medications are "not for me". As apparently an alternative, Plaintiff alleges that Bearden has told him that he could give him "Chiovzoxazone 500 mg" for his back pain, which Plaintiff complains is a "generic medication". Plaintiff alleges that Bearden as well as the Defendant Spencer (the nurse supervisor) are depriving him of treatment and that their actions constitute "gross negligence". Plaintiff further alleges that these Defendants' actions are "racial" and discriminatory because he is African American.[3]

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The parties have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[3]Plaintiff does not identify the race of Dr. Bearden or Nurse Spencer, but based on his allegations it is assumed they are white.

- 2 -



Plaintiff also complains that he has bipolar disorder and that his "doctor"[4] had him on "Neurontin"[5], but that his medications had run out on June 9, 2008. Plaintiff alleges the nurses as well as the Defendant Littlejohn keep taking him off the list for this medication because they do not want him on medications that they have to come to his door to give to him. Plaintiff alleges that he has filed several grievances concerning these matters, but that the Defendant Fowler (grievance coordinator) has been holding these grievances because he is a friend of the Defendant Spencer as well as because his wife is one of the nurses at the institution. Plaintiff alleges that Fowler has had ninety days to respond to his grievances, and has attached copies of several grievances to his complaint, as well as a Request to Staff Member form. In the Request to Staff Member form (dated July 28, 2008) Plaintiff is requesting that he be given medication for his "mo[od] swing[s]", which had previously been prescribed to him by the doctor at the Kirkland Correctional Institution. This form bears a response dated July 31, 2008 stating that Plaintiff had been added to the "psych-clinic list", and that Plaintiff is to tell the doctors of his symptoms and needs. One of Plaintiff's Step One Grievance forms is dated the following day, July 29, 2008, wherein Plaintiff complains that the Defendants Dr. Cross and Dr. Wood refuse to give him the medicine for his depression that he had previously been on, and that he was requesting to be placed back on that medicine. In the "Action Taken" portion of this grievance, Plaintiff was advised that he must first attempt to informally resolve a grievance before filing a Step One grievance, which he had not done. Plaintiff was further advised

---

[4]Apparently a physician who saw Plaintiff at a different prison, although this is by no means clear.

[5]This is the same medication Plaintiff previously alleged he wanted Dr. Bearden to place him on for his back pain.



that after attempting an informal resolution of his grievance, if it is not resolved he could then refile the grievance. The remainder of Plaintiff's Grievance Forms/Requests to Staff Member forms are all dated October or November 2008, as is a Sick Call Request form. Plaintiff's complaint is dated November 4, 2008.

Plaintiff seeks both monetary damages as well as declaratory or injunctive relief. <u>See generally</u> Verified Complaint, with attached Exhibits.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case, <u>see</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).



# I.

## (Issue of Exhaustion of Administrative Remedies)

Defendants first assert, <u>inter alia</u>, that this action should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions[6] under section1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. <u>See</u> <u>Anderson v. XYZ Correctional Health Services, Inc.</u>, 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; <u>Jones v. Bock</u>, 127 S.Ct. 910 (2007). To meet this burden, Defendants have submitted an affidavit from the Defendant Michael Fowler, who attests that he is the Grievance Coordinator at the Tyger River Correctional Institution. Fowler attests that the inmate grievance system allows the SCDC and inmates to jointly participate in the resolution of issues, and

---

[6]There is no definition for the term "prison conditions" contained in § 1997e. The Sixth Circuit utilizes a definition derived from 18 U.S.C. § 3262:

> [T]he term "civil action with respect to prison conditions" means any civil proceeding arising under federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

<u>Hartsfield v. Vidor</u>, 199 F.3d 305, 308 (6th Cir. 1999) (quoting 18 U.S.C. § 3262(g)(2)); <u>Almandiv v. Ridge</u>, 201 Fed.Appx. 865 at *2 (3d Cir. 2006); <u>Neal v. Goord</u>, 267 F.3d 116, 2001 WL 1178293 (2d Cir. Oct 04, 2001) (quoting <u>Lawrence v. Goord</u>, 238 F.3d 182, 185 (2d Cir. 2001) (*per curiam*)).



that the initial step in the SCDC inmate grievance is for the inmate to file a Step One grievance. The grievance coordinator will then conduct an investigation and a decision will be issued by the warden at the institution where the inmate is housed. Fowler attests that if the inmate disagrees with the warden's decision, the inmate may then file a Step Two grievance to have the decision reviewed. Fowler attests that he has reviewed Plaintiff's grievance records and found that, while Plaintiff has filed several grievances concerning medical care, he has not filed specific grievances against the named defendants in this case. Fowler further attests the Plaintiff has had some grievances returned to him as unprocessed because he failed to attempt an informal resolution or for other reasons, but that he has not filed grievances against the named defendants concerning the subject matter in his complaint. Fowler attests that, upon investigation of several of Plaintiff's grievances, he determined that the grievance was submitted on the same day that a Request to Staff form was sent, and that on several occasions the staff member had not even received the Request to Staff form when the grievance was submitted. Therefore, some grievances may have been returned to the Plaintiff as he did not allow sufficient time for the staff member to respond to the Request to Staff form prior to Plaintiff having filed the grievance.

Fowler attests that he has never refused to process any of the Plaintiff's grievances, and that he processes all grievances in accordance with SCDC policy. Fowler attests that Plaintiff is correct that his wife is employed as a nurse at Tyger River, but that he does not process grievances against his wife. Rather, it has been arranged that any grievances against his wife will be handled by his [Fowler's] supervisor. As for Spencer, Fowler attests that while he does have a professional relationship with Spencer, this does not affect how he handles or investigates grievances filed against



Spencer.  <u>See</u> <u>generally</u> Fowler Affidavit.

Defendants argue that Fowler's affidavit establishes that Plaintiff has failed to exhaust his administrative remedies with respect to the claims asserted in this lawsuit, and that this case should therefore be dismissed for failure to exhaust administrative remedies.  However, although Fowler attests that Plaintiff has not filed any grievances against the Defendants named in this lawsuit concerning the issues raised in this lawsuit, it is not required that the specific Defendants named in the complaint be named in a grievance in order to exhaust administrative remedies, as long as a grievance concerning the issues presented in the lawsuit has been filed and exhausted at the administrative level.  <u>Jones v. Bock</u>, 549 U.S. at 218-219 [Finding PLRA does not require naming of particular officials, rather, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."].  The question therefore becomes whether Fowler's affidavit sufficiently satisfies the Defendants' burden of showing that Plaintiff failed to exhaust his administrative remedies with respect to his claims.

Fowler attests in his affidavit that Plaintiff has filed several grievances concerning medical care, but does not identify what those medical claims were.  While Fowler also attests that Plaintiff has had many grievances returned unprocessed for various deficiencies, he does not state whether all of Plaintiff's grievances concerning his medical care fall into this category and, if not, what grievances concerning medical care have properly completed the grievance process, or whether any such grievances deal with the issues raised in this lawsuit.  For his part, Plaintiff does not even address Defendants' arguments with respect to exhaustion of administrative remedies in his



response[7].  However, he does specifically allege in his verified complaint that he has attempted to exhaust his administrative remedies, but that Fowler has failed to timely process them, and has attached several grievance forms to his complaint.

Since Plaintiff's compliant is itself dated November 4, 2008, the undersigned has not considered the grievances attached to Plaintiff's complaint which were filed in October and November of 2008, since there is no evidence to show that these grievances were or could have been exhausted prior to Plaintiff having filed this (almost) contemporaneous lawsuit.  Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending.]; Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999) [Prisoner "may not exhaust administrative remedies during the pendency of the federal suit."].  However, one grievance attached to Plaintiff's complaint is dated July 2008, and concerns Plaintiff's complaints against Drs. Cross and Wood and their alleged refusal to provide him with medication he is seeking for his depression.  This grievance not only pre-dates the filing of the complaint by approximately four (4) months, it appears to contradict the claim made by Fowler in his affidavit that Plaintiff has not filed any grievances against any named Defendant concerning the subject matter of the complaint.

After careful consideration of this evidence, the undersigned has determined that the Defendants failure to state with specificity what medical grievances filed by the Plaintiff have and have not been properly exhausted, together with the Step One grievance submitted by the Plaintiff

---

[7]Plaintiff's only statement in his memorandum opposing summary judgment with respect to this issue is as follows: "The plaintiff action should be grant which he try to exhaust his administrative remedies with the above defendants."  Plaintiff's Memorandum, p. 4.



from July 2008 showing that Plaintiff did file a grievance complaining about not receiving the medication he wanted for his mental condition, in conjunction with Plaintiff's sworn statement in his verified complaint that he has filed grievances concerning the medical claims he is making to no avail, is sufficient to raise a genuine issue of fact as to whether the Plaintiff properly exhausted (or attempted to exhaust) his administrative remedies prior to bringing this lawsuit to survive summary judgment.  See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [ administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002) [stating that prison's failure to timely respond renders administrative remedies unavailable]; Anderson, 407 F.3d at 683 [Inmates failure to exhaust administrative remedies is an affirmative defense to be proved by the Defendant].  Therefore, Defendants are not entitled to dismissal of this action at this time for failure of the Plaintiff to exhaust his administrative remedies.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)[At summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"].

## II.

### (Medical Claims)

With respect to the merits of Plaintiff's claims, in order to proceed with a claim under § 1983 for denial of medical care, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v.



<u>Sheffer</u>, 528 F.2d 318 (4th Cir. 1975); <u>Belcher v. Oliver</u>, 898 F.2d 32 (4th Cir. 1990). After careful review and consideration of the evidence and arguments presented to this Court, the undersigned does not find that Plaintiff has submitted evidence sufficient to give rise to a genuine issue of fact as to whether any Defendant has violated his constitutional rights with respect to the provision of medical care, and that this claim should therefore be dismissed.

First, Plaintiff himself describes the Defendants' alleged improper conduct as constituting "gross negligence." That is not the standard for liability for a constitutional claim being asserted under § 1983. Rather, as noted above, the standard is one of deliberate indifference. <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; <u>A.P. ex rel. Bazerman v. Feaver</u>, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."]. Hence, while Plaintiff could pursue a negligence claim against the Defendants in state court, he cannot pursue such a claim in a § 1983 case in federal court. <u>See</u> <u>DeShaney v. Winnebago County Dep't of Social Servs.</u>, 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; <u>Baker v. McClellan</u>, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; <u>Estelle</u>, 429 U.S. at 106 ["Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"].

Further, even if Plaintiff had not himself asserted that his claims arise in negligence, he has failed to otherwise provide evidence sufficient to give rise to a genuine issue of fact as to the merits of his medical claims, thereby entitling the Defendants to summary judgment. Plaintiff has presented no evidence to show that any named Defendant was deliberately indifferent to any serious

medical need. Rather, Plaintiff only generally alleges in his complaint that medical personnel refused to provide him specific medications he requested, and instead provided him with other medications. Even assuming this allegation to be true for purposes of summary judgment, it does not in and of itself constitute evidence of a constitutional violation. <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; <u>House v. New Castle County</u>, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]. Plaintiff has presented no medical opinions or other competent evidence to support his claims or to show that he received inadequate medical treatment. <u>See</u> <u>Scheckells v. Goord</u>, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing <u>O'Connor v. Pierson</u>, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though <u>pro</u> <u>se</u> litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; <u>Green v. Senkowski</u>, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim].

Not only has Plaintiff failed to present any evidence to support his medical claims, but in contrast to Plaintiff's general and conclusory allegations that he has received improper medical care, the Defendants have submitted substantial evidence to show that Plaintiff's medical needs are being adequately considered and addressed. The Defendant Richard Bearden has submitted an affidavit where he attests that he is a licensed physician who has been practicing medicine for over



thirty-six years. Bearden attests that he has seen the Plaintiff on a number of occasions and has also reviewed his medical records, a copy of which (totaling two hundred sixty eight pages of medical records and summaries) have been submitted by the Defendants as an exhibit. Bearden attests that Plaintiff has been seen regularly by medical personnel (over one hundred times) since he arrived at Tyger River in August 2007, and that he [Bearden] personally has seen Plaintiff over fifteen times since he has been at Tyger River. With respect to Plaintiff's complaints of back pain, Bearden attests that Plaintiff was seen at, and permanently discharged from, the orthopedic clinic. Bearden attests that he has himself examined Plaintiff concerning his complaints of back pain and has found no objective findings to show any type of problem with his back; i.e. no swelling, inflamation, deformity, no muscle spasms, good range of motion, a steady gait, no radicular pains, numbness, or tingling, and no difficulty in getting on or off the examination table. Bearden further attests that, notwithstanding there having never been any objective findings relating to Plaintiff's back, he has been seen on numerous occasions by medical providers concerning his back and has been prescribed numerous medications, including muscle relaxers, anti-inflammatory medications, and pain medications. Bearden attests that he has himself prescribed various medications for the Plaintiff on a number of occasions, although Plaintiff has often been noncompliant with medications after they have been prescribed.

Bearden attests that Plaintiff has on a number of occasions claimed a medication was not working or causing some type of side effect and requested to be switched to another medication, but that after switching to the new medication Plaintiff has asked to switch back to the prior medication, stating that it had worked for him. Bearden attests that Plaintiff has also requested certain medications by name, and becomes dissatisfied if he [Bearden] does not prescribe him the



specified medication he has requested. Bearden attests that, on several occasions, he has prescribed the specific medication Plaintiff requested, only to have Plaintiff either be noncompliant or ask to switch to another medication for some reason. Plaintiff has also had his medications discontinued on at least one occasion when he was found to be hoarding medications in his cell.

Bearden attests that Plaintiff has also been placed on different medications for depression or anxiety, including Neurontin by a psychiatrist for mental health issues. Bearden further attests, however, that the prescription for Neurontin expired and was not renewed by the psychiatrist, following which Plaintiff stated that the Neurontin had helped his back problem and requested that he [Bearden] prescribe this specific medication for him. Bearden attests that he informed Plaintiff that he did not believe this medication was indicated for his complaints concerning his back, and would not prescribe this medication for him. Bearden attests that he informed Plaintiff that the psychiatrist could prescribe this medication for him if he felt it was indicated for mental health issues, but that he [Bearden] did not believe it was appropriate to prescribe this medication to him for back problems, as Plaintiff requested. Bearden attests that he is not a psychiatrist, and does not treat psychiatric problems. Bearden attests that Neurontin is generally used for seizures and as a psychotropic medication and also can be used for chronic neurological pain, but that in his opinion Neurontin was not indicated for Plaintiff's complaints concerning his back as these did not appear to be neurological in nature. Bearden attests that while Plaintiff has also requested to be placed on Bacolofen, this is not an appropriate medication for the Plaintiff at this time, and that he believes there are appropriate alternative medications for the Plaintiff. Bearden attests that, in his opinion, Plaintiff has been provided proper medical care for his conditions while at Tyger River. See generally Bearden Affidavit; see also Defendants' Exhibit [Plaintiff's Medical Records].



The Defendant Amy Spencer has also submitted an Affidavit wherein she attests that she is a licensed Registered Nurse at the Tyger River Correctional Institution, where her job is to supervise the Nurses and oversee the medical department. Spencer attests that she has seen the Plaintiff on numerous occasions since he arrived at Tyger River in August 2007, that Plaintiff is seen regularly by medical personnel, and that Plaintiff has been seen well over one hundred times by medical personnel since he arrived at Tyger River. Spencer attests that she has examined Plaintiff on numerous occasions concerning complaints about his back, but has found no objective findings that show any type of problem with his back, nor to her knowledge has there ever been any objective findings relating to Plaintiff's back by any medical provider since he has been at Tyger River. Plaintiff has, however, been prescribed numerous medications, including muscle relaxers, anti-inflammatory medications, and pain medications for his complaints. Spencer further attests that Plaintiff has often been noncompliant with medications after they have been prescribed. Spencer attests that Plaintiff has requested changes in his medications on a number occasions, following which he would ask to be switched back to his previous medication, and that he has also requested certain medications by name and becomes dissatisfied if he does not receive the specific medication he requested. Plaintiff has also been found to be hoarding medications in his cell, including having been found in possession of six capsules of Ceroquel and approximately three hundred tablets of Zantac.

Spencer attests that Plaintiff has complained on a number of occasions that medical personnel cannot allow security to deliver "observed" medications. Spencer attests that, with observed medications, the inmate must be actually observed taking the medication to make sure they do not attempt to hoard the medications as Plaintiff has done in the past. Spencer also attests that all

- 14 -



of the nurses at Tyger River are female, and that there is a great deal of disruption when female medical personnel enter the SMU [Special Management Unit], where Plaintiff is housed. Spencer attests that policy allows for security officers to deliver observed medications to inmates as long as the officer is in view of medical personnel at all times, with the medications being placed in an envelope with the inmate's name and containing only the medications for that specific inmate. Spencer attest that this does not compromise medical care in any manner, but simply helps to limit the disruption in the SMU and help prevent female medical personnel from being exposed to sexual misconduct by inmates. <u>See</u> <u>generally</u> Spencer Affidavit.

The Defendant Geraldine Littlejohn has submitted an affidavit attesting that she is a Clinical Correctional Counselor at Tyger River, and that she has been a licensed Master Social Worker since 1987. Littlejohn attests that she has seen the Plaintiff on numerous occasions and has also reviewed his medical records, but that although she sees inmates to address mental health concerns, she is not a physician and cannot prescribe medications. Littlejohn attests that she used to be the only Clinical Correctional Counselor at Tyger River, but that another counselor was hired in March 2008 and was assigned to take over seeing all inmates in the SMU because there was a great deal of disruption when female personnel would enter the SMU. Littlejohn further attests that this counselor has since left this position, but that Plaintiff and other inmates in the SMU are now being seen by a counselor from another institution.

Littlejohn attests that Plaintiff has requested to be taken out of the SMU and returned to the general population, but that she does not have the authority to have Plaintiff removed from the SMU. Littlejohn attests that, as an SMU inmate, Plaintiff is seen every thirty days by a Clinical Correctional Counselor and is sent to Columbia to be evaluated by a psychiatrist every ninety days.

With respect to these visits, Littlejohn attests that Plaintiff has had to have a psychiatry clinic appointment rescheduled due to inclement weather, and that he has also refused to go to the psychiatry clinic on one occasion. On September 18, 2008, Plaintiff was scheduled to go to the psychiatry clinic in Columbia, but was not taken due to failure to obey orders from security personnel. Shortly after this incident, Littlejohn then received a Request to Staff form from the Plaintiff wherein he was requesting to go to the psychiatry clinic. Littlejohn attests that she responded to this request by advising Plaintiff that, as he refused his appointment, he would have to wait until a new appointment could be scheduled. Littlejohn attests the appointments are set well in advance, and that they had to wait until there was another available slot for the Plaintiff to be seen at a psychiatry clinic after he refused his prior visit. Littlejohn attests that Plaintiff was seen at the psychiatry clinic on December 4, 2008. Plaintiff's medical records show numerous visits to the mental health clinic and doctor's clinic for his psychiatric complaints. See generally Littlejohn Affidavit. See also Plaintiff's Medical Records, pp. 1-4, 6-7, 9-21, 24-26.

Finally, the Defendant Beverly Wood has submitted an affidavit attesting that she is the Chief Psychiatrist for the Department of Corrections, but does not maintain an office at the Tyger River Correctional Institution. Wood attests that, though it is possible she has examined the Plaintiff, she has not reviewed Plaintiff's medical records and has no personal recollection of the Plaintiff or having ever being contacted by the Plaintiff. Wood also does not recall ever speaking with the Plaintiff, nor does she recall receiving any correspondence from him stating that he felt he was not receiving appropriate mental health case. See generally Wood Affidavit.

The material filed in support of the Defendants' motion for summary judgment, including Plaintiff's medical records, show that Plaintiff has been seen and treated for his medical



complaints. None of the information contained in Plaintiff's medical records supports Plaintiff's claims of inadequate medical care, nor do Plaintiff's own exhibits attached to his complaint provide support for such a claim. Further, a licensed physician, a registered nurse, as well as a licensed master social worker who have all been involved in providing direct care to the Plaintiff attest that Plaintiff has been afforded prompt and adequate care for his medical complaints. Plaintiff has provided no evidence from a medical professional to dispute these assertions.

The undersigned can discern no evidence of a constitutional violation in the evidence presented to the Court. While Plaintiff may not agree with the extent and nature of the medical care he has received, he cannot simply allege in a conclusory fashion that he has not received adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive summary judgment. Papasan v. Allain, 478 U.S. 265, 286 (1986) [Courts need not assume the truth of legal conclusions couched as factual allegations]; Morgan, 829 F.2d 10, 12; see Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; see also Green, 100 Fed.Appx. 45 [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]); House, 824 F.Supp. at 477, 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511 U.S. at 837.

Plaintiff may, of course, pursue a claim in state court if he believes the medical care



he has received has been inadequate. However, the evidence before the Court is insufficient to raise

a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious

medical needs, the standard for a constitutional claim, and therefore his federal § 1983 medical claim

should be dismissed. See DeShaney, 489 U.S. at 200-203 [§ 1983 does not impose liability for

violations of duties of care arising under state law]; Baker, 443 U.S. at 146 [§ 1983 claim does not

lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not

become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v.

Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v.

Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976)

[affirming summary dismissal].

### III.

### (Grievance Issues)

To the extent Plaintiff is complaining in his complaint about the grievance system and

how his grievances were handled, this is not a claim cognizable under § 1983, as there is no

constitutional right to access to a prison grievance procedure. See Adams v. Rice, 40 F.3d 72 (4th

Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Buckley v. Barlow, 997 F.2d 494, 495

(8th Cir. 1993) [existence of a prison grievance procedure does not confer any substantive right upon

inmates]; Brown v. Dodson, 863 F.Supp. 284 (W.D.Va. 1994) [inmates do not have a constitutionally

protected right to a grievance procedure]; Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill. 1982)

[even where a state elects to provide a grievance mechanism, violations of its procedures do not

deprive prisoners of federal constitutional rights. Therefore, a state's failure to follow its grievance

procedures does not give rise to a § 1983 claim]; Spencer v. Moore, 638 F.Supp. 315, 316 (E.D.Mo.



1986) [holding that an inmate grievance procedure is not constitutionally required]; <u>see also</u> <u>McGuire v. Forr</u>, No. 94-6884, 1996 WL 131130, at *1 (E.D.Pa. March 21, 1996), <u>aff'd</u>, 101 F.3d 691 (3d Cir. 1996) [creation of a grievance system by a state does not create any federal constitutional rights, as prisoners are not constitutionally entitled to a grievance procedure]; <u>Moore v. Sergent</u>, No. 01-1271, 2001 WL 1355298 (6th Cir. Oct. 26, 2001); <i>cf.</i> <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989) [prison officials may place reasonable limits on prisoner's access to grievance procedure]. Therefore, to the extent Plaintiff has intended to assert this as a claim in this lawsuit, it is subject to dismissal.

### IV.

### (Racial Claim)

Finally, with respect to Plaintiff's general and conclusory claim in his complaint that the doctor and nurses who have been responding to his complaints have been discriminating against him because he is an African American, such a conclusory allegation, standing alone and without any supporting evidence, is not sufficient to present a viable claim or to withstand a properly supported summary judgment motion. <i>Cf.</i> <u>Buford v. Sutten</u>, No. 04-959, 2005 WL 756092 at * 3 (W.D.Wis. Mar. 29, 2005)["An individual seeking relief on a claim of race discrimination under the equal protection clause must allege facts suggesting that a person of a different race would have been treated more favorably."](citing <u>Jaffe v. Barber</u>, 689 F.2d 640, 643 (7th Cir. 1982); <u>Wilson v. Wigen</u>, No. 96-0620, 1997 WL 158117 at * 3 (E.D.Pa. Mar. 31, 1997)). <u>See</u> <u>Chapman v. City of Detroit</u>, 808 F.2d 459, 465 (6th Cir. 1986)["(Plaintiff's) conclusory allegations of...discrimination are not sufficient to establish liability."]; <u>Jaffe v. Federal Reserve Bank of Chicago</u>, 586 F.Supp. 106, 109 (N.D.Ill. 1984) [A plaintiff "cannot merely invoke his race in the course of the claim's narrative and



automatically be entitled to pursue relief"]; <u>May v. Baldwin</u>, 895 F.Supp. 1398, 1410 (D.Or. 1995)["Though prison authorities may not discriminate against inmates on the basis of their race, plaintiff offers no evidence that he has been mistreated by prison officials because he is black."](internal citation omitted), <u>aff'd</u>, 109 F.3d 557 (9th Cir. 1997), <u>cert.</u> <u>denied</u>, 522 U.S. 921 (1997); <u>see</u> <u>Papasan</u>, 478 U.S. at 286; <u>Morgan</u>, 829 F.2d 10, 12. Therefore, this claim should be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Defendants' Motion for summary judgment be **granted**, and that this case be **dismissed.**[8]

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 13, 2009

Charleston, South Carolina

---

[8]In addition to the grounds for summary judgment discussed hereinabove, the Defendants have also asserted additional grounds for dismissal, indicating that Plaintiff failed to assert any claims against one or more Defendants, qualified immunity, and other such defenses. Since Plaintiff's claims are subject to dismissal for the reasons cited, the merits of the remainder of these defenses have not been discussed.



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

